UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **TURON REAVES**,<br>Petitioner,<br>v.<br>**JEFFREY HOWARD**,<br>Respondent. | **2:23-CV-11633-TBG-KGA**<br>HON. TERRENCE G. BERG<br>**OPINION & ORDER DENYING HABEAS PETITION,**<br>**DENYING CERTIFICATE OF APPEALABILITY,**<br>**AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL** |

Michigan prisoner Turon Reaves ("Reaves"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court convictions. Pet., ECF No. 1. Reaves was convicted of first-degree premeditated murder, three counts of assault with intent to commit murder, felon in possession of a firearm, and two counts of possession of a firearm during the commission of a felony, second offense, following a jury trial in the Wayne County Circuit Court. In 2019, he was sentenced to life in prison without parole on the murder conviction, concurrent terms of life in prison with the possibility of parole on the assault convictions, a concurrent term of two to five years in prison on the felon in possession conviction, and concurrent terms of five years

in prison on the felony firearm convictions, to be served consecutively to the other sentences.

In his habeas petition, Reaves raises claims concerning the sufficiency of the evidence, the jury instructions, the admission of a lab report, gruesome victim photographs, testimony that he refused to participate in a lineup (after his right to counsel had attached), and ammunition evidence, the conduct of the prosecutor, and the effectiveness of trial counsel. ECF No. 1. For the following reasons stated, the Court will **DENY** and **DISMISS WITH PREJUDICE** the habeas petition, **DENY** a certificate of appealability, and **DENY** leave to proceed in forma pauperis on appeal.

## I. FACTS & PROCEDURAL HISTORY

Reaves' convictions arise from a mistaken identity drive-by shooting in which one person was killed and others were injured following an altercation at a nightclub in Detroit, Michigan on October 14, 2018. Reaves, who was alleged to be the driver of the vehicle, was tried jointly before a single jury with co-defendant Felix Antoine Jones-Hill, who was alleged to be the shooter. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)), as follows:

> Defendants' convictions arise from a drive-by shooting on Eight Mile Road in Detroit at approximately 2:00 a.m. on

October 14, 2018. The four victims were in a Dodge Charger when a Ford Fusion pulled up along the driver's side of their vehicle and an occupant of the Fusion began shooting at the victims' vehicle. Toma Al-Saoor ("Toma"), the driver of the Charger, his brother Taef Al-Saoor ("Taef"), who was a backseat passenger, and Taef's girlfriend, Mireya Jurado, who was also in the backseat, were all shot. Taef died from his injury, a gunshot wound to the head. A fourth occupant, Rami Hadaya, who was the front-seat passenger, was not injured. The prosecution's theory at trial was that both defendants were occupants of the Fusion and they targeted the victims' vehicle in a case of mistaken identity. The prosecutor argued that Reaves was driving the Fusion and Jones-Hill was the shooter.

The prosecution presented evidence that the shooting was preceded by an earlier incident at the Ace of Spades strip club on Eight Mile Road in Detroit. Shortly before the two defendants left the club, Jones-Hill and a man known as "O" were involved in an altercation in the parking lot, during which Jones-Hill removed an assault rifle from the Fusion. A security guard intervened, kept Jones-Hill from raising his rifle, and directed "O" to leave. The guard also asked Jones-Hill to leave, but allowed him to go back inside the club to get Reaves. The security guard placed Jones-Hill's assault rifle on a backseat in the Fusion when Jones-Hill went inside the club. When the two defendants came back out, Jones-Hill asked the guard where "O" went, but the guard did not know. Reaves then got into the driver's seat of the Fusion and Jones-Hill got into the backseat, where the guard had placed the assault rifle. The two then left the club together in the Fusion. The prosecutor's theory at trial was that Jones-Hill intended to "settle a score" with "O" when they left the club.

The shooting occurred within minutes after defendants left the club's parking lot. The vehicle that "O" drove, as depicted in surveillance recordings, was a gray Dodge Challenger; it was a unique, newer model with a wet paint finish and tinted

> windows. The victims were driving a similar looking Dodge Charger that night. The prosecutor argued that defendants mistook the victims' vehicle for the vehicle driven by "O."
>
> Defendant Reaves conceded that he was at the club just before the shooting, but denied possessing any weapons or engaging in any argument at the club that night, or doing anything to actively assist in the charged crimes. Jones-Hill argued that from the security guard's observations, it was "O," not Jones-Hill, who was perceived as a threat, and that there was no evidence identifying him as the person who shot at the victims' vehicle.

*People v. Reaves*, No. 352348, 2021 WL 4239024, at *1-2 (Mich. Ct. App. Sep. 16, 2021).

Following his convictions and sentencing, Reaves filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions and sentences. *See id.* at *2-17. Reaves also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Reaves*, 510 Mich. 869 (2022).

Reaves thereafter filed the instant federal habeas petition. ECF No. 1. He raises the following claims:

> I. Conviction premised upon insufficient evidence constitutes violation of due process of law.
>
> II. Erroneous jury instruction constitutes violation of due process of law.
>
> III. Erroneous jury instruction constitutes violation of due process of law and equal protection.

IV. Admission of forensic laboratory report constitutes violation of right to confrontation.

V. Gratuitous admission of inflammatory and prejudicial photograph constitutes violation of due process of law.

VI. Admission of refusal to participate in line up without counsel subsequent to attachment of right to counsel constitutes violation of Sixth and Fourteenth Amendments.

VII. Erroneous admission of evidence constitutes violation of due process of law.

VIII. Prosecutorial misconduct constitutes violation of due process of law.

IX. Prejudicial denial of effective assistance of counsel authorizes consideration of writ of habeas corpus.

*Id.* at PageID.3. Respondent filed an answer to the petition contending that it should be denied because several of the claims are waived and/or procedurally defaulted and all of the claims lack merit. Ans., ECF No. 7. Reaves filed a reply to the answer, ECF No. 9, as well as supplemental authority in support of his claims, ECF Nos. 10-15.

## II. LEGAL STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002) ("A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.").

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions

but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous[,] . . . [t]he state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (citations omitted). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citation omitted). Under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A petitioner cannot prevail as long as it is within the "realm of possibility that a fairminded jurist" could find the state court decision to be reasonable. *See Woods v. Etherton*, 578 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) ("'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."). Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court,'" and it "cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (noting that AEDPA "prohibits the federal courts of appeals from

relying on their own precedent to conclude that a particular constitutional principle is 'clearly established'"). The decisions of lower federal courts, however, "may be instructive in assessing the reasonableness of the state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citation omitted). But "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original); *see also Mitchell*, 540 U.S. at 16 (noting that "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions" and "a state court need not even be aware of [Supreme Court] precedents"). Furthermore, Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100.

A state court's factual determinations are presumed correct on federal habeas review, and the petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Moreover, habeas

review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

### A. Sufficiency of the Evidence

Reaves first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions. Specifically, he argues that the prosecution failed to present sufficient evidence of his identity as one of the perpetrators and failed to present sufficient evidence of his intent. Respondent contends that this claim lacks merit.

The Due Process Clause protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (citation omitted). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and "through the framework of 28 U.S.C. § 2254(d)," *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus,

under the AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups [the trier of fact and the state court on appellate review] who might view facts differently than [a federal court on habeas review] would," as long as the state appellate court's sufficiency determination "is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Additionally, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim" that the evidence at trial was insufficient. *Id*. at 788-89.

Under Michigan law, first-degree premeditated murder, Mich. Comp. Laws § 750.316, requires proof that "the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Kelly*, 231 Mich. App. 627, 642 (1998). Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Abraham*, 234 Mich.

App. 640, 656 (1999) (citation omitted). While there is no minimum time required to show premeditation and deliberation under Michigan law, it requires "sufficient time to allow the defendant to take a second look." *Id.*

The elements of assault with intent to commit murder, Mich. Comp. Laws § 750.83, are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Ericksen*, 288 Mich. App. 192, 195-96 (2010) (citation omitted). The factfinder may infer the requisite intent from "the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed[;] whether the instrument and means used were naturally adapted to produce death[;] [the defendant's] conduct and declarations prior to, at the time, and after the assault[;] and all other circumstances calculated to throw light upon the intention with which the assault was made." *Hudson v. Lafler*, 421 F. App'x 619, 626 (6th Cir. 2011) (citing *People v. Taylor*, 422 Mich. 554, 568 (1985), quoting *Roberts v. People*, 19 Mich. 401, 415-16 (1870)).

The elements of felon in possession, Mich. Comp. Laws § 750.224f, are: (1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession, less than three or five years, depending on the underlying felony, has passed since the defendant paid all fines, served all terms of imprisonment, and successfully completed all terms of probation or parole imposed for the violation. *People v. Perkins*, 262 Mich. App. 267, 269 (2004), *aff'd* 473

Mich. 626 (2005). The elements of felony firearm, Mich. Comp. Laws § 750.227b, are: (1) the defendant possessed a firearm, (2) during the commission of, or the attempt to commit, a felony offense. *People v. Akins*, 259 Mich. App. 545, 554 (2003) (citation omitted).

To convict a defendant under an aiding and abetting theory, Mich. Comp. Laws § 767.39, a prosecutor must show: "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *People v. Robinson*, 475 Mich. 1, 6 (2006) (citation omitted). An aider and abettor's state of mind may be inferred from all the facts and circumstances of the crime, including a "close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Turner,* 213 Mich. App. 558, 568-69 (1995), *overruled in part on other grounds*, *People v. Mass*, 464 Mich. 615, 628 (2001).

The prosecution must prove every element of a charged offense beyond a reasonable doubt. This burden includes proving that the defendant is the person who committed the crime. *People v. Oliphant*, 399 Mich. 472, 489 (1976) ("'Identity' . . . is always an essential element in a criminal prosecution[.]"); *People v. Kern*, 6 Mich. App. 406, 409 (1967)

(“As an essential part of his case, the prosecutor must identify the accused as the person who committed the alleged offense. . . . The duty of the prosecutor to identify the accused is an element of his general duty to prove defendant’s guilt beyond a reasonable doubt. Certainly proof of defendant’s connection with the alleged offense is an indispensable element of that duty.”). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 400 (2000) (citation omitted), including identity, *Kern*, 6 Mich. App. at 409-10, and intent, *People v. Dumas*, 454 Mich. 390, 398 (1997). “[B]ecause it can be difficult to prove a defendant’s state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant’s state of mind, which can be inferred from all the evidence presented.” *People v. Kanaan*, 278 Mich. App. 594, 622 (2008).

The Michigan Court of Appeals considered Petitioner’s claim on direct appeal, applied the *Jackson* standard and relevant state law principles, and denied relief. The court explained in relevant part:

> The prosecution’s theory at trial was that Jones-Hill was the shooter, that he was acting in retaliation for the earlier encounter with “O” when he shot at the victims’ vehicle, mistakenly believing that he was shooting at “O’s” vehicle, and that Reaves aided or abetted Jones-Hill in committing the underlying crimes by driving the Fusion and acting in concert with Jones-Hill when they targeted the victims’ vehicle. On appeal, Reaves does not argue that the evidence failed to show that the underlying offenses were committed, but argues that

the evidence was insufficient to link him to the offenses and to establish his guilt under an aiding or abetting theory. In particular, he argues that the evidence was insufficient to identify him as the driver of the Fusion, and further, the evidence was insufficient to show that he had knowledge of Jones-Hill's intent to retaliate against "O" or commit any crime, or to show that he assisted Jones-Hill in committing the crime. We disagree.

***

First, the evidence was sufficient to enable the jury to find that Reaves was the driver of the vehicle involved in the shooting. Toma identified the shooter's vehicle as a Ford Fusion. Witness testimony indicated that Reaves and Jones-Hill left the Ace of Spades club minutes before the shooting in a Ford Fusion, and a witness testified that Reaves was driving the vehicle when it left the club and exited onto Eight Mile. A compilation of surveillance videos showed the vehicles involved as they traveled down Eight Mile. In addition, the police were able to view the license plate of the Fusion from a surveillance recording at the Ace of Spades and determine that the vehicle was registered to Reaves's mother, and testimony indicated that Reaves was allowed to use that vehicle. Evidence was also presented that, after the offense, Reaves told his mother that he had scrapped the Fusion for cash. This testimony was sufficient to enable the jury to find that Reaves was the driver of the Ford Fusion that was involved in the shooting, and that he attempted to destroy the vehicle after the offense because of his knowledge of its involvement in the offense.

Reaves additionally argues, however, that there was insufficient evidence of his knowledge and intent to support his convictions under an aiding or abetting theory. The prosecutor's theory at trial was that the charged crimes were committed in retaliation for the earlier altercation between Jones-Hill and "O" at the Ace of Spades club. Testimony indicated that Jones-Hill and "O" were involved in an altercation in the parking lot at the Ace of Spades in which

both men produced firearms and "O" directed racial slurs at Jones-Hill. A security guard intervened to defuse the situation and told "O" to leave, and "O" then left in his car. After Jones-Hill retrieved Reaves from inside the club, Jones-Hill asked the guard about "O," and was told that "O" had already left the club. According to the guard, Reaves and Jones-Hill were the only persons to get into the Ford Fusion, but Reaves got into the backseat where the guard had placed the assault rifle that Jones-Hill possessed during the earlier altercation with "O." Although Reaves argues that there was no evidence that he knew that Jones-Hill had a weapon or that Jones-Hill told him about his encounter with "O" minutes earlier, the testimony that the guard placed the assault rifle on the backseat and that Jones-Hill got into the backseat when the two men left the parking lot supported an inference that Reaves was in a position to see the rifle and knew that Jones-Hill had access to the rifle as they were leaving the parking lot. Further, the evidence that the security guard, while armed with his own firearm, helped escort Reaves and Jones-Hill as they left the Ace of Spades lot and exited onto Eight Mile supported an inference that Reaves was aware that something had happened that created a risk of danger to their safety.

The shooting occurred within minutes after Reaves and Jones-Hill left the Ace of Spades club. Testimony indicated that the victims were in a vehicle that was similar looking to the vehicle that "O" was driving, and also had distinct features that were similar to the features on "O's" vehicle. According to testimony, the Fusion was driving slowly on Eight Mile Road and when the victims' vehicle passed the Fusion, the driver of the Fusion pulled to the driver's side of the victims' car as the shooting started. After Toma stopped his vehicle, the driver of the Fusion stopped in front of the victims' car, and Toma also described the Fusion again approaching closer to the victims' vehicle when a second round of gunshots were fired, after which the Fusion drove off down a side street. The evidence of the earlier altercation

> between Jones-Hill and "O" at the Ace of Spades and that Jones-Hill got into the backseat of the Ford Fusion where the assault rifle had been placed when he and Reaves left the club supported an inference that Jones-Hill had a motive to seek revenge against "O" and was prepared to do so. Further, the evidence that "O" was driving a vehicle that was similar in appearance to the victims' vehicle supported an inference that the victims' vehicle was targeted because Jones-Hill believed it was "O's" vehicle. In addition, the testimony describing the manner in which the Fusion was being driven and how it was maneuvered to enable the shooter to fire upon the victims' vehicle supported an inference that Reaves, the driver, was aware of Jones-Hill's intent to fire the assault rifle at the victims' car, and assisted him in doing so by the manner in which he operated and positioned the vehicle, in particular just before the second round of gunshots.
>
> Furthermore, evidence was presented that although the Fusion was owned by Reaves's mother, Reaves never returned the vehicle and told her that he had scrapped it. When the police searched the home of Reaves's mother, they found the license plate for the Fusion under a dresser in a bedroom that Reaves used, and Reaves's mother denied knowing about it or putting it there. This evidence supported an inference that Reaves acted to destroy the Fusion and hide the license plate because of his consciousness of guilt for his involvement in the charged crimes.
>
> In sum, viewed in a light most favorable to the prosecution, the evidence was sufficient to establish Reaves's guilt of the charged crimes under an aiding or abetting theory.

*Reaves*, 2021 WL 4239024, at *7-9 (legal standards omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented sufficient evidence of Reaves' identity as the driver

of the vehicle involved in the shooting and sufficient evidence that he acted with the requisite intent to support his conviction as an aider and abetter. Such evidence included: (1) the strip club security guard's testimony that a man named "O" and co-defendant Jones-Hill had an armed altercation outside of the club, that O drove away in a grey Dodge Charger, that Jones-Hill went back into the club to get Reaves, and that Reaves and co-defendant Jones-Hill left together in a white Ford Fusion with Reaves driving and co-defendant Jones-Hill in the back passenger seat with his previously-brandished firearm shortly before the shooting occurred, 11/21/19 Trial Tr., ECF No. 8-10, PageID.643-56; (2) the strip club's surveillance recording (photographs and video) depicting the same, *id.* at PageID.657-83; (3) victim Toma Al-Saoor's testimony that he was driving a grey Dodge Charger with the other victims on Eight Mile near the strip club when he passed a white Ford Fusion, that several shots were fired at them from that car when it maneuvered close to them, and that he and two of his passengers were shot (one fatally), *id.* at PageID.735-40; (4) the police testimony and accompanying surveillance videos depicting O's grey Dodge Charger, the victims' similar grey Dodge Charger, and the white Ford Fusion with a licence plate registered to Reaves' mother, 11/26/19 Trial Tr., ECF No. 8-12, PageID.990-93; (5) testimony from Reaves' mother that Reaves had access to her white Ford Fusion, that he took the car in October, 2018 but never returned it, and told her he had scrapped it, 11/25/19 Trial Tr., ECF No. 8-11, PageID.938-

43; (6) the Ford Fusion license plate found under a nightstand in a bedroom at Reaves' mother's house, 11/26/19, ECF No. 8-12, PageID.1044-46; (7) the rifle ammunition found in Reaves' mother's basement that was compatible with the bullets used in the shooting, *id.* at PageID.1047-49; (8) testimony from a security guard at Reaves' girlfriend's apartment complex that he recorded "Terry" entering the complex in a white Ford Fusion (with Reaves' mother's licence plate) the night before the shooting and recorded "Terry" returning to the complex driving a different car (with a different license plate) during the early morning hours after the shooting, 11/25/19 Trial Tr., ECF No. 8-11, PageID.919-22; and (9) clothing matching what Reaves was wearing on the night of the shooting was found in his girlfriend's apartment, 11/26/19 Trial Tr., ECF No. 8-12, PageID.1020-23. Such evidence, whether direct or circumstantial, viewed in a light favorable to the prosecution, was sufficient to establish Reaves' guilt of the charged offenses under an aiding and abetting theory.

Reaves challenges the jury's evaluation of the testimony and evidence presented at trial. However, it is the job of the factfinder at trial, not a federal habeas court on review, to resolve such evidentiary conflicts. *See Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and

must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

**B. Preliminary Comment During Jury Instructions**

Reaves next asserts that he is entitled to habeas relief because the trial court improperly expressed a view of the evidence in a preliminary comment before instructing the jury on aiding and abetting. Respondent contends that this claim lacks merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are "undesirable, erroneous, or even 'universally condemned.'" *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974) (citation omitted). Rather, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citation omitted); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (citing *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977)) ("The exception is when the instruction is so flawed as a matter of state law as to 'infect[ ] the entire trial' in such a way that the conviction violates federal due process."). A jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72; *see also Jones v. United States*, 527 U.S. 373, 391 (1999) ("[I]nstructions must be evaluated not in isolation but in the context of the entire charge.").

State law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72. To warrant habeas relief, a petitioner must show that the challenged instruction had a "substantial and injurious effect" or influence on the jury's verdict. *Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> When instructing the jury on aiding or abetting, the trial court stated:
>
> > *I also need to explain to you another concept known as aiding and abetting because the evidence as you've heard it had one occupant of the Fusion doing the shooting and the other apparently doing the driving.* You should understand the concept of aiding and abetting here as well.
> >
> > So in this case both Defendants are charged with committing first degree premeditated murder and assault with intent to murder, felons in possession of firearm and felony firearm. Anyone who intentionally assists someone else in committing any crime is as guilty as the person who actually commits the crime and can be convicted of that crime as an aider and abettor.... [(Emphasis added.)]
>
> Defendants argue that the emphasized comments improperly conveyed to the jury the court's view regarding disputed questions of fact, namely, that the shots were fired from the Fusion and that one occupant of the Fusion was the shooter and the other the driver.

Preliminarily, we agree with defendants that, when responding to the defense objection, the trial court inaccurately stated that it had qualified its remarks by stating that it was commenting on the prosecution's theory of the case. However, that in fact was the prosecutor's theory and the court did not misrepresent the evidence by stating that "the evidence as you've heard it had one occupant of the Fusion doing the shooting and the other apparently doing the driving." This remark was consistent with evidence presented at trial. We believe that defendants overstate the effect of the trial court's remarks as an expression of the court's view of the evidence. Viewed in context, the remarks were made as introductory comments intended only to explain why the court was instructing the jury on aiding or abetting—because, as the trial court indicated, evidence was presented that "one occupant of the Fusion [was] doing the shooting and the other apparently doing the driving." The court did not indicate that it believed that testimony or express any opinion whether the testimony implicated either of the defendants. In this context, the court's remarks cannot be viewed as endorsing the prosecutor's theory or usurping the jury's role as the fact-finder. *See People v Young*, 364 Mich 554, 558-559; 111 NW2d 870 (1961).

Furthermore, to the extent that there was any perceived risk that the jury might interpret the court's remarks as an expression of the court's view of the evidence, the trial court adequately protected defendants' rights to a fair trial by instructing the jury to disregard any opinions that the jury believed the court may have expressed. Specifically, the court instructed:

> My comments, rulings, questions and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to the case. However, when I make a comment or give an instruction, I am not trying to influence your vote or express a

> > personal opinion about the case. If you believe that I have an opinion about how you should decide the case, pay no attention to that opinion. You are the only judges of the facts and you must decide this case only from the evidence.
>
> "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).
>
> In sum, viewing the instructions as a whole and in context, we disagree with defendants' contention that the trial court's preliminary comments would have been understood as an expression of the trial court's view of the evidence, as opposed to merely an explanation for why the court was providing an instruction on aiding or abetting. To the extent that the comments could have been perceived as such, the court's instruction to the jury to disregard any perceived opinion by the court, which the jury is presumed to have followed, protected defendants' right to a fair trial.

*Reaves*, 2021 WL 4239024, at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Reaves asserts that the trial court erred in instructing the jury under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws,

or treaties of the United States."); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987) ("The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure."); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Second, Reaves fails to establish that the trial court's preliminary comment rendered his trial fundamentally unfair or "'infect[ed] the entire trial' in such a way that the conviction violates federal due process." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (citation omitted). When read in context, it is apparent that the trial court was merely stating the prosecution's theory of the case in order to explain the need for an aiding and abetting instruction. While the trial court's comment was perhaps inartful, it did not direct the jury to make a specific factual finding or legal determination.

Moreover, the trial court clearly instructed the jurors that it was their job to decide the facts of the case, that they should do so only based upon the evidence at trial, and that the court's comments, rulings, and instructions are not evidence and should not be seen as trying to influence the jury's decision. 11/27/19 Trial Tr., ECF No. 8-13, PageID.1150, 1152, 1153. The trial court also properly instructed the jury on the presumption of innocence and reasonable doubt. *Id.* at

PageID.1151. Jurors are presumed to follow the court's instructions. *Penry v. Johnson*, 532 U.S. 782, 799 (2001); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Given the context of the disputed comment and the trial court's repeated and clear statements that the facts were for the jurors alone to determine and that they should disregard any remarks they thought reflected the court's opinion, there is no reasonable probability that the jurors understood the trial court's preliminary comment to direct them to make a particular factual finding or conclude that Reaves was guilty of aiding and abetting the crime. *See United States v. Jennings*, 40 F. App'x. 1, 5 (6th Cir. 2001) ("The district court properly placed the burden of proof upon the government and instructed the jury that it was to decide whether the government met that burden after hearing the evidence to be presented.").

Reaves fails to establish that the trial court's preliminary comment, when considered in the context of the jury instructions as a whole, denied his right to a fundamentally fair trial. Habeas relief is not warranted on this claim.

### C. Aiding and Abetting Jury Instruction

Reaves next asserts that he is entitled to habeas relief because the trial court erred in instructing the jury on the intent required to support a conviction as an aider and abettor, particularly as to first-degree

murder. Respondent contends that this claim is waived and/or procedurally defaulted and that it lacks merit.

As discussed, state law instructional errors rarely form the basis for federal habeas relief. *Estelle*, 502 U.S. at 71-72. In order for habeas relief to be warranted on the basis of incorrect jury instructions, they must be so erroneous that they rendered the entire trial fundamentally unfair. *Id.* at 72; *Henderson*, 431 U.S. at 154.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> Reaves did not object to the trial court's substantive instruction on aiding or abetting at trial. Therefore, at a minimum, this issue is unpreserved and subject to review for plain error affecting substantial rights. *Carines*, 460 Mich at 763. As plaintiff observes, however, this issue could also be considered waived. After the trial court instructed the jury, and after addressing Reaves's objection to the court's preliminary comments regarding aiding or abetting, the court asked if there was "Anything else?" and Reaves's counsel answered, "Nope." Because counsel was given the opportunity to identify any issues with the court's jury instructions and he affirmatively represented that there were no other issues, any error in the instructions could be deemed waived. *See People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009) (defense counsel's expression of satisfaction with the court's jury instructions waived any instructional error). Regardless, Reaves has not established that the trial court's jury instructions were erroneous.
>
> The trial court instructed the jury on aiding or abetting consistent with M. Crim. JI 8.1. As relevant to this appeal, the instruction advised the jury that to prove the third element of

aiding or abetting, the prosecution was required to prove that the defendant "must have intended the commission of the crime alleged or must have known that the other person intended its commission or that the crime alleged was a natural and probable consequence of the commission of the crime intended." Reaves argues that he could not be guilty of aiding or abetting first-degree murder or assault with intent to commit murder unless he specifically intended the commission of those crimes, and it was improper to instruct the jury that he could be convicted of these crimes if the jury found that the crimes were a natural and probable consequence of the commission of the crimes intended. We disagree. In *Robinson*, 475 Mich at 15, our Supreme Court explained the intent necessary to convict a defendant under an aiding or abetting theory:

> A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet. Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense.

The trial court's instruction, which was consistent with M. Crim. JI 8.1, accurately described the intent necessary to convict a defendant under an aiding or abetting theory as stated in *Robinson*. Therefore, we reject this claim of error.

*Reaves*, 2021 WL 4239024, at *9-10.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Michigan Court of Appeals' ruling that the trial court's instruction was proper under Michigan law is controlling on habeas review. *See Bradshaw*, 546 U.S. at 76. Thus, to the extent that Reaves asserts that the trial court erred in instructing the jury under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Rashad*, 675 F.3d at 569; *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328.

Additionally, Reaves fails to establish that the trial court's aiding and abetting instruction rendered his trial fundamentally unfair. The instruction, along with the instructions on first-degree murder, assault with intent to commit murder, and the weapons offenses, adequately conveyed to the jury the necessary elements of the charged crimes, including the intent necessary to support a conviction for first-degree premeditated murder under an aiding and abetting theory. Reaves fails to establish that the trial court's aiding and abetting instruction was erroneous, let alone that it rendered his trial fundamentally unfair. *See Polk v. Trombley,* No. 2:06-CV-10568, 2007 WL 2746614, at *4 (E.D. Mich. Sep. 19, 2007)(Zatkoff, J.) ("Because the Michigan Court of Appeals determined that the jury instruction accurately reflected the elements of aiding and abetting, petitioner is not entitled to habeas relief. In addition, because the instructions as a whole properly conveyed the elements of

aiding and abetting an armed robbery, petitioner has failed to show that he was deprived of a fair trial so as to entitle him to habeas relief.") (citations omitted).

Therefore, habeas relief is not warranted on this claim.

### D. Admission of Lab Report

Reaves next asserts that he is entitled to habeas relief because the trial court erred in admitting a ballistics lab report. He asserts that the report was not timely disclosed under Michigan Court Rule 6.202(B) and that its admission without requiring the appearance of the person who prepared the report violated his confrontation rights. Reaves further asserts in a footnote that trial counsel was ineffective for failing to properly object to such matters. Respondent contends that this claim is waived and/or procedurally defaulted and that it lacks merit.

The Confrontation Clause generally prohibits the admission of testimonial out-of-court statements at trial. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Testimonial statements include, among other things, "pretrial statements that declarants would reasonably expect to be used" in prosecution, *id.* at 51, typically including forensic reports generated in connection with a criminal investigation. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009) (noting that expert report is "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination'" when presented to prove truth of its content); *Bullcoming v. New Mexico*, 564 U.S. 647, 653 (2011) ("The

accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.").

Nevertheless, clearly established Supreme Court law allows a State to impose time constraints on a Confrontation Clause objection. The Supreme Court has approved so-called "notice-and-demand procedures," like the one found in Michigan Court Rule 6.202, holding that they "typically 'render . . . otherwise hearsay forensic reports admissible[,] while specifically preserving a defendant's right to demand that the prosecution call the author/analyst of [the] report.'" *Bullcoming*, 564 U.S. at 666 (citing *Melendez-Diaz*, 557 U.S. at 326-27). Notice-and-demand procedures are sufficient to protect a defendant's rights when they "permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report." *Melendez-Diaz*, 557 U.S. at 326.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> Defendants argue that a report prepared by Brian Grabowski, a firearms forensic scientist, was erroneously admitted at trial in lieu of calling Grabowski as a witness. We disagree.
>
> To preserve an evidentiary issue for appeal, the party opposing the admission of evidence must object at trial and specify the same ground for objection that he asserts on appeal. MRE 103(a)(1); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendants argue that the report

was not admissible under MCR 6.202 because the prosecutor failed to comply with the requirements of the court rule. They further argue that the introduction of the report without calling the report's author to testify violated their constitutional right of confrontation….

***

Before trial, under MCR 6.202, the prosecution filed a notice of its intent to introduce the firearm examiner's laboratory report at trial in lieu of calling the author of the report as a witness. A copy of the report was included with the notice. Neither defendant filed objections to the prosecution's notice of intent.

MCR 6.202 provides, in relevant part:

> (B) Disclosure. Upon receipt of a forensic laboratory report and certificate, if applicable, by the examining expert, the prosecutor shall serve a copy of the laboratory report and certificate on the opposing party's attorney or party, if not represented by an attorney, within 14 days after receipt of the laboratory report and certificate. A proof of service of the report and certificate, if applicable, on the opposing party's attorney or party, if not represented by an attorney, shall be filed with the court.
>
> (C) Notice and Demand.
>
> (1) Notice. If a party intends to offer the report described in subsection (B) as evidence at trial, the party's attorney or party, if not represented by an attorney, shall provide the opposing party's attorney or party, if not represented by an attorney, with notice of that fact in writing. If the prosecuting attorney intends to offer the report as evidence at trial, notice to the defendant's attorney or the defendant, if not represented by an

> attorney, shall be included with the report. If the defendant intends to offer the report as evidence at trial, notice to the prosecuting attorney shall be provided within 14 days after receipt of the report. Except as provided in subrule (C)(2), the report and certification, if applicable, is admissible in evidence to the same effect as if the person who performed the analysis or examination had personally testified.
>
> (2) Demand. Upon receipt of a copy of the laboratory report and certificate, if applicable, the opposing party's attorney or party, if not represented by an attorney, may file a written objection to the use of the laboratory report and certificate. The written objection shall be filed with the court in which the matter is pending, and shall be served on the opposing party's attorney or party, if not represented by an attorney, within 14 days of receipt of the notice. If a written objection is filed, the report and certificate are not admissible under subrule (C)(1). If no objection is made to the use of the laboratory report and certificate within the time allowed by this section, the report and certificate are admissible in evidence as provided in subrule (C)(1).

Defendants first argue that the report was not admissible because the prosecution failed to provide a copy of the firearm examiner's report within 14 days of its receipt of the report. Defendants note that the report is dated January 17, 2019, and the prosecutor did not provide a copy of the report until November 4, 2019. As defendants concede, however, the 14-day period does not begin to run on the date a report is prepared, but rather, runs from the date it is received by the prosecution. Defendants concede that the record is silent as to when the prosecution received the report. Defendants argue that because it cannot be determined from the record that the

prosecution satisfied the 14-day requirement, they have established a plain error. We disagree. Had defendants objected on this basis at trial, a record could have been developed as to when the prosecutor received the report. But because defendants never objected on this basis at trial, defendants have the burden of establishing a plain error, which is defined as an error that is "clear or obvious." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). A clear or obvious error is "one that is not 'subject to reasonable dispute.'" *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted). Because, as defendants concede, the record is silent as to when the prosecution received the report, it is not clear or obvious that the prosecution failed to comply with the 14-day period in MCR 6.202(C). Moreover, the trial court gave both defendants an opportunity at trial to address whether the prosecutor had complied with the procedural requirements of the court rule and both defendants agreed that she had. Therefore, defendants have failed to establish a plain error with respect to whether the requirements of the court rule were satisfied.

Defendants also argue that the admission of the firearm examiner's report without calling the firearm examiner as a witness violated their constitutional right of confrontation. We conclude that because defendants did not file objections to the prosecution's notice of intent to offer the report as evidence at trial in lieu of calling the report's author as a witness, they waived their right of confrontation.

MCR 6.202 is a type of notice-and-demand rule. In *Melendez-Diaz v Massachusetts*, 557 US 305, 326-327; 129 S Ct 2527; 174 L Ed 2d 314 (2009), the United States Supreme Court observed:

> In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the

> defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial. Contrary to the dissent's perception, these statutes shift no burden whatever. The defendant always has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the time within which he must do so. States are free to adopt procedural rules governing objections. It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial, announcing his intent to present certain witnesses. There is no conceivable reason why he cannot similarly be compelled to exercise his Confrontation Clause rights before trial. Today's decision will not disrupt criminal prosecutions in the many large States whose practice is already in accord with the Confrontation Clause. [(Citations omitted).]

MCR 6.202(C) is a notice-and-demand rule. It requires the prosecutor to provide notice to the defendant of an intent to use a forensic laboratory report as evidence at trial, after which the defendant is given 14 days to file a written objection to the use of the report. MCR 6.202(C)(1) and (2). This court rule is constitutional, *Melendez-Diaz*, 557 US at 326-327, 327 n 12, and a defendant who fails to file a written objection to the prosecutor's notice of intent waives his right of confrontation, *id*. at 313 n 3. In this case, both defendants were notified of the prosecution's intent to introduce the firearm examiner's report as evidence at trial in lieu of calling the report's author as a witness. Neither defendant filed objections. Therefore, defendants waived their rights to confront the report's author at trial.

*Reaves*, 2021 WL 4239024, at *4-6 (state standard of review and text and footnote related to co-defendant's claims omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Reaves asserts that the lab report was admitted into evidence in violation of the Michigan court rules, federal habeas relief does not lie for perceived errors of state law, as discussed. *Estelle*, 502 U.S. at 67-68.

Second, as to any perceived Confrontation Clause violation, the Court agrees with the Michigan Court of Appeals that Reaves has waived this claim. Waiver is the "intentional relinquishment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation omitted) (comparing waiver with forfeiture, which is the "failure to make the timely assertion of a right"). A criminal defendant who waives rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34); *see also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("[W]aiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors."). The right to confrontation may be waived, including by failure to object to the offending evidence. *Melendez-Diaz*, 557 U.S. at 314 n.3.

Because trial counsel did not object in writing before trial and conceded at trial that the prosecutor complied with the applicable court rule, 11/25/19 Trial Tr., ECF No. 8-11, PageID.857-58, Reaves has waived

review of this claim. "Absent a demonstration of ineffectiveness, counsel's word on [ ] matters [such as evidentiary objections] is the last." *New York v. Hill*, 528 U.S. 110, 115 (2000). Thus, habeas relief is not warranted on this claim. *See McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) ("Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'") (citation omitted); *see also Smith v. Cook*, 956 F.3d 377, 390 (6th Cir. 2020) ("[T]here is no 'clearly established Federal law, as determined by the Supreme Court of the United States,' 28 U.S.C. § 2254(d)(1), holding that a valid Confrontation waiver requires personal assent from the defendant.").

Reaves relatedly asserts that trial counsel was ineffective for failing to properly object to the admission of the lab report and request the appearance of its author. While it is debatable whether Reaves exhausted this specific issue in the state courts and the Michigan Court of Appeals did not address it, the Court shall nonetheless consider the issue and review it de novo. *See, e.g., Stermer v. Warren*, 959 F.3d 704, 721-24 (6th Cir. 2020) (discussing the standards of review in cases where the Michigan appellate courts issue form-like orders, and noting that "if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies" and "the petitioner's claim is reviewed *de novo* as it would be on direct appeal").

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test for establishing that a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. *Id*. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id*. Second, the petitioner must prove that counsel's deficient performance prejudiced the defense. *Id*. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the first performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. A habeas petitioner bears the burden of overcoming the presumption that the challenged actions "might be considered sound trial strategy." *Id*. at 689.

To satisfy the second prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A reasonable probability is one that is "sufficient to undermine confidence in the outcome" of the proceeding. *Id.* "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. *See Harrington*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In this case, even assuming that Reaves could show that trial counsel erred by not properly objecting to the admission of the lab report (on state procedural or federal constitutional grounds), he fails to allege or establish that he was prejudiced by counsel's conduct in this regard. He offers no explanation or evidence, such as an affidavit from the person who prepared the report or another ballistics expert, to show how the appearance of the person who prepared the lab report would have

benefitted the defense or otherwise affected the outcome at trial. He only asserts that the substance of the report "comprised the lynchpin of the prosecutions' [sic] circumstantial case" against him. ECF No. 1-1, PageID.31, n.17. But it is well-settled that conclusory allegations are insufficient to warrant habeas relief. *See Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) ("[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing [on habeas review]."); *Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance. . . are insufficient to state a constitutional claim.").

Reaves fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

**E. Admission of Victim Autopsy Photograph**

Reaves next asserts that the trial court erred in admitting an autopsy photograph of the deceased victim depicting his fatal head wound. Respondent contends that this claim is not cognizable and that it lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993) ("[H]abeas relief cannot be granted simply 'on the basis of a perceived error of state law'") (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984)). "Trial court errors in state procedure and/or evidentiary

law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Andrew v. White*, 604 U.S. 86, 88 (2025) ("[W]hen 'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'") (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> Defendants argue that the autopsy photograph of the deceased's gunshot wound to his head should have been excluded because it was only marginally relevant and its gruesome character had a tendency to inflame the jury. In *Davis, id*. at 488, this Court stated:
>
>> Evidence is generally admissible if it is relevant, MRE 402, i.e., if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," MRE 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. The "[g]ruesomeness" of a photograph standing alone is insufficient to merit its

> exclusion. [*People v] Mills*, 450 Mich [61, 76; 537 NW2d 909 (1995), *modified* 450 Mich 1212 (1995)]. The proper question is "whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Id*.

"Photographs are admissible if substantially necessary or instructive to show material facts or conditions." *People v Hoffman*, 205 Mich App 1, 18; 518 NW2d 817 (1994). "If photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id*. In the case of autopsy photographs, they are considered relevant when they are instructive in depicting the nature and extent of the victim's injuries. *People v Flowers*, 222 Mich App 732, 736; 565 NW2d 12 (1997). Photographs are not required to be excluded simply because a witness can orally testify about the same information; a photograph is admissible to corroborate a witness's testimony. *Mills*, 450 Mich at 76. However, photographs that depict the gruesome nature of a crime and are not pertinent, relevant, or material to any issue in the case, but serve only to inflame the jurors' minds and prejudice them against the defendant, should be excluded. *Id*. at 77.

***

The prosecutor argued at trial that the use of a firearm that was capable of firing high-velocity ammunition was probative of the shooter's intent to kill, which is a necessary element of both first-degree premeditated murder and assault with intent to commit murder. The medical examiner testified at trial that the nature of the decedent's head wound was consistent with the use of a high-velocity projectile. Although the witness was able to orally describe the decedent's head wound, he used the photograph to explain the large gaping nature of the wound, to show how it differed from a small circular entrance wound that is typically found with lower energy projectiles, and to point out the multiple lacerations on

> the skin and explain how the projectile caused fragmentation of the bone and the underlying brain, which was consistent with a high-velocity projectile. The photograph was relevant not only to corroborate the medical examiner's testimony about the nature of the wound, but also to help illustrate for the jury the points he made in his testimony and the bases for his opinion that the wound was caused by a high-velocity projectile. Furthermore, the angle of the photograph was focused principally on the top of the victim's head, without showing any facial features, which lessened the prejudicial impact of the photo. *See People v Howard*, 226 Mich App 528, 550; 575 NW2d 16 (1997) (a photograph of the victim's neck alone, excluding the victim's face, diminished any extraneous prejudice from including the victim's facial features). Considering these factors, the probative value of the photograph was not substantially outweighed by the danger of unfair prejudice. Therefore, the trial court did not abuse its discretion by admitting the photograph.

*Reaves*, 2021 WL 4239024, at *6-7 (irrelevant text omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Reaves asserts a violation of the Michigan Rules of Evidence or state law, he fails to state a claim upon which habeas relief may be granted. As discussed, federal habeas relief is unavailable for perceived violations of state law, *Estelle*, 502 U.S. at 67-68. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *See Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *Bradshaw*, 546 U.S. at 76.

Second, Reaves fails to establish that the admission of the autopsy photograph violated his due process rights and denied him a fair trial.

The Supreme Court has not ruled that the admission of crime scene or autopsy photographs violates due process. Rather, the Supreme Court has stated that "[t]he fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of de process." *Lisenba v. California*, 314 U.S. 219, 228-29 (1941). The United States Court of Appeals for the Sixth Circuit has held that a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude. *See Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) for the proposition that admission of "gruesome photo of decedent . . . did not raise 'the spectre of fundamental fairness such as to violate federal due process of law,'" and finding petitioner's claim of ineffective assistance of counsel regarding admission of gruesome slides failed to state a constitutional claim cognizable on habeas); *Franklin v. Bradshaw*, 695 F.3d 439, 456-57 (6th Cir. 2012) (admission of 18 autopsy photographs of victims did not render state criminal trial fundamentally unfair); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (affirming district court's denial of habeas relief on claim challenging the admission of victim photographs which refuted the petitioner's account of the victim's death).

In this case, the deceased victim's autopsy photograph was relevant and admissible under state law. It identified the victim,

depicted the nature and severity of his gunshot wound, and was relevant to show how he died, as well as the perpetrator's state of mind. Furthermore, the trial court only admitted a single autopsy photograph of the victim's head wound into evidence. The admission of far more gruesome photos has been upheld on federal habeas review. *See, e.g., Biros*, 422 F.3d at 391 (affirming denial of habeas relief on claim challenging the admission of three photographs depicting: (1) the victim's severed head, (2) her severed head held near her torso and severed breast, and (3) her torso with her severed head and severed breast re-placed on the torso). Reaves fails to establish that the admission of the autopsy photograph was erroneous, violated due process, or rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

**F. Admission of Lineup Refusal**

Reaves next asserts that he is entitled to habeas relief because the trial court erred in admitting testimony about his refusal to participate in a lineup, which occurred in the absence of counsel after his right to counsel had attached. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

As discussed, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354. Such an error warrants federal habeas relief only if it renders the proceeding "so

fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo*, 365 F.3d at 494; *see also Andrew*, 604 U.S. at 88.

The Michigan Court of Appeals reviewed this claim for plain error on direct appeal and denied relief. The court explained in relevant part:

> Reaves next argues that he was denied a fair trial by the introduction of testimony that he refused to participate in a lineup. Reaves argues that this testimony was irrelevant and it undermined his presumption of innocence. Because Reaves did not object to this testimony at trial, this issue is unpreserved and our review is limited to plain error affecting Reaves's substantial rights. *Carines*, 460 Mich at 763-764.
>
> ***
>
> Although Reaves argues that his refusal to participate in the lineup was irrelevant, we believe, as other courts have held, that such evidence is relevant to demonstrate a defendant's consciousness of guilt. *See People v Alexander*, 49 Cal 4th 846, 905-906; 235 P3d 873 (2010). It is well-established in Michigan that evidence showing a defendant's consciousness of guilt is relevant and admissible at trial. *See People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003) (addressing evidence of flight). Reaves also argues that this evidence undermined his presumption of innocence because there may be innocent reasons for deciding not to participate in a lineup (e.g., on the advice of counsel or because of a belief that a lineup would not be fair), and he should not be required to participate in a lineup to prove his innocence. However, Reaves never presented any offer of proof below that there were innocent reasons for his refusal to participate in the lineup, such that it would be unfair to allow the prosecution to present this evidence. Moreover, he does not dispute that the trial court properly instructed the jury on the presumption of innocence. Under these circumstances, Reaves has failed to demonstrate that the introduction of this evidence constituted

> plain error, either because the evidence was irrelevant or because its probative value was substantially outweighed by the danger of unfair prejudice.
>
> Reaves further argues that his right to counsel was violated because he was not informed of his right to counsel when he was asked to participate in the lineup. The Sixth Amendment right to counsel applies to identification procedures. *People v Hickman*, 470 Mich 602, 607, 611; 684 NW2d 267 (2004). However, because Reaves did not object to the challenged testimony, a factual record was never developed regarding whether Reaves was informed of his right to counsel at any lineup. Regardless, even if Reaves had a right to counsel at a lineup, because he refused to participate in a lineup, no lineup was held. There could be no violation of Reaves's right to counsel at a procedure that was never held.

*Reaves*, 2021 WL 4239024, at *10-11 (discussion of state law omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Michigan Court of Appeals ruled that the evidence of Reaves' refusal to participate in a lineup was relevant and admissible under state law to show consciousness of guilt. That state law determination is controlling on habeas review. *See Bradshaw*, 546 U.S. at 76. Thus, to the extent that Reaves asserts that the trial court erred in admitting the testimony under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not justify federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328.

Second, Reaves fails to show that the admission of such evidence violated his constitutional rights. Given that the testimony of his refusal

to participate in a lineup was relevant and admissible under Michigan law to show consciousness of guilt, its admission was not fundamentally unfair and did not violate due process. "Admission of testimony that a defendant refused to participate in a lineup, which alone tends to indicate guilt, does not result in constitutional error." *Carter v. Sherry*, No. 2:07-CV-40, 2009 WL 5216065, *2 (W.D. Mich. Dec. 29, 2009) (citing *United States v. Parhms*, 424 F.2d 152, 154 (9th Cir. 1970) for the proposition that "[a]dmission of testimony that a defendant refused to participate in a lineup, which alone tends to indicate guilt, does not result in constitutional error," and denying habeas relief on similar claim regarding testimony that petitioner declined to participate in lineup, albeit where petitioner had consulted with counsel); *see also Grigg v. Phillips*, 401 F. App'x 590, 594 n.2 (2d Cir. 2010) ("[E]vidence of a defendant's refusal to supply palm prints, which the government had a right to obtain, was admissible as evidence of consciousness of guilt. The same rationale would permit introduction of the failure to give prints and the failure to participate in a lineup in this case.") (citations omitted).

The admission of such evidence also did not violate Reaves' Fifth Amendment rights. The Fifth Amendment privilege against self-incrimination applies only to compelled incriminating statements that are testimonial in nature and does not prohibit requiring a person to exhibit physical characteristics. *United States v. Hubbell*, 530 U.S. 27, 35 (2000) ("[E]ven though the act may provide incriminating evidence, a

criminal suspect may be compelled to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice. The act of exhibiting such physical characteristics is not the same as a sworn communication by a witness that relates either express or implied assertions of fact or belief.”). The Fifth Amendment does not prevent a defendant from being compelled to appear in a physical lineup. *United States v. Wade*, 388 U.S. 218, 222 (1967) (“[C]ompelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance.”).

Because “[t]he Fifth Amendment is not implicated by appearance in a lineup,” evidence of a defendant’s refusal to participate in a lineup does not violate the right against self-incrimination. *O’Brien v. Wainwright*, 738 F.2d 1139, 1143 (11th Cir. 1984) (denying habeas relief where “[n]o error was constitutionally committed in the admission of, and no fundamental unfairness occurred,” from “[t]estimony concerning refusal of a defendant to participate in a lineup” which “is highly probative of guilt”); *Swanigan v. Rivard*, No. 11-11833, 2012 WL 5379557, *6 (E.D. Mich. Oct. 31, 2012)(Duggan, J.) (“Because the Fifth Amendment is not implicated by a criminal defendant's appearance in a lineup, evidence of a defendant's refusal to appear in a lineup does not violate his right against self-incrimination.”).

Additionally, the admission of testimony that Reaves refused to participate in a lineup did not violate his right to be presumed innocent. The fact that certain actions by a defendant can be used to show consciousness of guilt does not require a jury to find as much. And Reaves was free to present evidence and/or argue that his refusal to participate in the lineup was for innocent reasons. Reaves fails to sufficiently explain or support his claim that such testimony violated the presumption of innocence afforded criminal defendants at trial. As noted, conclusory allegations are insufficient to warrant habeas relief. *See Wogenstahl*, 668 F.3d at 343; *Renico*, 455 F.3d at 733.

Lastly, Reaves fails to demonstrate that the admission of testimony that he refused to participate in a lineup violated his right to counsel. The right to have counsel present at a corporeal lineup attaches to lineups conducted after the initiation of adversarial judicial criminal proceedings. *Moore v. Illinois*, 434 U.S. 220, 226 (1977). In this case, it is undisputed that Reaves had already been arraigned and was represented by counsel at the time of the lineup request. Thus, had a lineup been conducted in counsel's absence, Reaves' right to counsel may have been violated. Given that a lineup was never conducted, however, his right to counsel was not violated.

Reaves cites no Supreme Court authority for his claim that he had a right to the presence of counsel when he was asked to participate in the lineup and refused to do so. This is fatal to his claim on federal habeas

review because the Michigan Court of Appeals' denial of relief cannot be deemed contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See Aceval v. Maclaren*, 671 F. App'x 368, 369 (6th Cir. 2016) (denying habeas relief on novel due process claim unsupported by Supreme Court precedent); *Coleman v. Bergh*, 804 F.3d 816, 819 (6th Cir. 2015) (vacating grant of certificate of appealability on issue due to lack of controlling Supreme Court authority).

Nor does Reaves allege that he requested, but was denied, access to counsel when making his decision about whether to participate in the lineup. Given such circumstances, he fails to demonstrate a violation of his Sixth Amendment rights. *See Wright v. Borg*, 28 F.3d 111, 1994 WL 202295 (Table), at *1 (9th Cir. 1994) ("While Wright was entitled to the presence of counsel at the line-up, he had no right to refuse to participate in the line-up."); *see also Swanigan*, 2012 WL 5379557, at *6 ("[T]here is no indication that the police refused to allow Petitioner's counsel to be present at the lineup.").

In sum, Reaves fails to establish that the admission of testimony regarding his refusal to participate in a lineup rendered his trial fundamentally unfair or otherwise violated his constitutional rights. Habeas relief is not warranted on this claim.

### G. Admission of Ammunition Evidence

Reaves next asserts that he is entitled to habeas relief because the trial court erred in admitting evidence of the ammunition found at his

mother's house. Respondent contends that this claim is procedurally defaulted and that it lacks merit.

Again, as discussed, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354. Such an error warrants federal habeas relief only if it renders the proceeding "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo*, 365 F.3d at 494; *see also Andrew*, 604 U.S. at 88.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> Reaves also challenges the admissibility of evidence that, when searching the home of Reaves's mother, the police found a briefcase that contained live ammunition of a type that could be fired from a rifle. Contrary to what Reaves argues, we are not persuaded that he properly preserved this issue below.... In any event, to the extent that this issue is preserved, the trial court did not abuse its discretion by admitting the evidence. *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014).
>
> At trial, the police officers involved in executing a search warrant at the home of Reaves's mother testified that, in addition to recovering the license plate to the Fusion, they also recovered a briefcase from the basement that contained live ammunition, including three rounds that could be fired from a rifle. At trial, one of the involved officers testified that the ammunition was a type that could be fired from a rifle. During closing argument, the prosecutor argued that this evidence connected Reaves to the firearm used in the shooting

and showed that he had "the tools necessary to have carried out this crime."

On appeal, Reaves argues that the ammunition evidence should have been excluded under MRE 402 because it was not relevant, and under MRE 403 because any minimal relevance was substantially outweighed by the danger of undue prejudice. We disagree.

Relevant evidence is generally admissible, and evidence which is not relevant is not admissible. MRE 402; *People v Campbell*, 236 Mich App 490, 503; 601 NW2d 114 (1999). Evidence is relevant if it tends to make the existence of a fact at issue more or less probable than it would be without the evidence. MRE 401; *Campbell*, 236 Mich App at 503. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Sabin* (After Remand), 463 Mich 43, 58; 614 NW2d 888 (2000). Unfair prejudice does not mean any prejudice, but refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 336-337; 521 NW2d 797 (1994) (quotation marks and citation omitted).

The prosecutor's theory at trial was that the ammunition found in the briefcase was relevant to connect Reaves to the firearm used in this crime because it showed that he had access to the type of ammunition that was used in the shooting. Reaves first argues that the ammunition was not relevant because it was found at his mother's house and could not be connected to him because he did not reside there. However, evidence was presented that Reaves had access to his mother's home. Indeed, the prosecution also presented evidence that the license plate for the Ford Fusion that Reaves was driving when he left the Aces of Spades club, which was visible in surveillance recordings from the club,

was also found in that house. Thus, there was sufficient evidence to enable the jury to find that Reaves had access to the house where the ammunition was found.

Reaves also argues that the photographs and testimony about the ammunition should not have been admitted because there was no testimony that the ammunition was the same caliber of ammunition used in the shooting. However, in the context of firearm evidence, evidence of a defendant's possession of a weapon of the kind used in an offense is considered to be relevant to connect the defendant to that offense. *See People v Kramer*, 103 Mich App 747, 758-759; 303 NW2d 880 (1981), quoting 22A CJS, Criminal Law, § 712, pp. 965-967 ("a weapon or instrument found in the possession of accused or of his criminal associates which, although not identified as the one actually used, is similar in form and character thereto, or which, from the circumstances of the finding justifies an inference of the likelihood or possibility of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred, or for the purpose of illustration, or of showing preparation, or the state of mind or intent of accused"); *see also People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989). Although the firearm used in the shooting was never recovered, the security guard at the Ace of Spades club described the weapon in Jones-Hill's possession as a "pistol-style assault rifle," and other testimony was presented that evidence discovered at the crime scene was consistent with the use of a weapon that fired high-velocity bullets, consistent with an assault rifle. The officer testified that the live ammunition found during the search was a type that could be fired from a rifle. This was minimally sufficient to show that the ammunition was of a type that could have been used in the shooting, and thus was relevant to connect Reaves to the firearm used in the offense.

Furthermore, we are not persuaded that the evidence was required to be excluded under MRE 403. The jury was aware

that the ammunition could not be conclusively determined to be the same ammunition that was used in this offense. It was up to the jury to determine what weight, if any, to give to the evidence. *People v Howard*, 391 Mich 597, 605; 218 NW2d 20 (1974). Moreover, contrary to what Reaves argues, the prosecutor did not exploit the ammunition evidence during closing argument, but merely pointed out that the ammunition could have been compatible with the rifle used in this shooting, which was the proper purpose for which the evidence was relevant.

Reaves also argues that the ammunition evidence was subject to MRE 404(b)(1) because it was evidence of another crime, given that he was not eligible to possess ammunition because of his status as a convicted felon. He argues that the evidence was not admissible under this rule because the prosecutor did not provide notice 14 days before trial that she intended to offer this evidence for a proper purpose under MRE 404(b)(1), as required by MRE 404(b)(2). We disagree that the evidence was subject to MRE 404(b).

MRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but such evidence "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." In *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015), our Supreme Court explained that "by its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference," and "[c]orrespondingly, acts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b)." In this case, the ammunition evidence

> was offered for its relevancy to the conduct at issue in this case. That is, it was offered to show that Reaves could be connected to the weapon used in the shooting because of his possession of ammunition of the type that could have been used in the offense. Indeed, there was no attempt to use the evidence for any impermissible character-to-conduct purpose. Therefore, Reaves's reliance on MRE 404(b)(1) is misplaced.
>
> In sum, Reaves has not established any error, plain or otherwise, in the admission of the ammunition evidence.

*Reaves*, 2021 WL 4239024, at *11-13 (issue preservation text omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Reaves asserts a violation of the Michigan Rules of Evidence or state law, he fails to state a claim upon which habeas relief may be granted. As discussed, federal habeas relief is unavailable for perceived violations of state law. *Estelle*, 502 U.S. at 67-68; *see also Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *Bradshaw*, 546 U.S. at 76.

Second, Reaves fails to establish that the admission of the ammunition evidence denied him a fundamentally fair trial. The ammunition evidence was relevant to the type of firearm possessed by Jones-Hill at the strip club and believed to have been used in the shooting and was relevant to link Reaves to the use of such a firearm and to the shooting in general. The ammunition was also sufficiently associated with Reaves given that it was found at his mother's house (as was the license plate from the white Ford Fusion).

And, contrary to Reaves' claim, the prosecution did not use the ammunition evidence for any improper purpose, such as propensity to commit a crime. Reaves fails to show that the admission of the ammunition evidence was erroneous or, more importantly for purposes of federal habeas review, that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

**H. Conduct of the Prosecutor**

Reaves next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by presenting inadmissible evidence, misstating the evidence, and misstating the law. Respondent contends that these claims are procedurally defaulted and that they lack merit.

The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must show that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*, 416 U.S. at 643); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard and is "clearly established Federal law"). The standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations." *Parker*, 567 U.S. at 48 (citation omitted). "That leeway increases in assessing a

state court's ruling under AEDPA" because the reviewing federal court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (citation omitted).

The Michigan Court of Appeals reviewed these claims for plain error on direct appeal and denied relief. The court explained in relevant part:

> 1. PROSECUTOR'S PRESENTATION OF EVIDENCE
>
> First, Reaves argues that the prosecutor engaged in misconduct by offering evidence that was inadmissible. As explained in *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999),
>
> [P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence. *People v Missouri*, 100 Mich App 310, 328; 299 NW2d 346 (1980). The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant. *Id*. at 328-329.
>
> Reaves argues that it was improper for the prosecutor to introduce evidence of (1) the discovery of ammunition in his mother's basement, (2) his refusal to participate in a lineup, and (3) the laboratory report regarding the ballistics evidence recovered in this case. As discussed earlier, Reaves has not demonstrated that any of this evidence was inadmissible. Accordingly, the prosecutor's introduction of this evidence cannot be considered misconduct.

Reaves also argues that the prosecutor engaged in misconduct by eliciting Detective-Sergeant James Plummer's opinion testimony that the spent ammunition recovered in this case was consistent with high-velocity ammunition fired from an assault rifle when Detective-Sergeant Plummer was not qualified to testify as an expert. Under MRE 702, a witness with specialized knowledge may offer testimony in the form of an opinion if the testimony will assist the trier of fact in understanding the evidence or determining a fact at issue, and the witness is qualified as an expert by knowledge, skill, experience, training, or education. Although Detective-Sergeant Plummer was not formally qualified as an expert witness, he testified at trial that he had been in charge of the Michigan State Police's evidence technician program and had received training in firearms and ballistics both as a Marine Corps sniper and through the Michigan State Police. Moreover, the prosecutor's theory at trial was that Jones-Hill possessed an assault rifle, and Detective-Sergeant Plummer's testimony would have assisted the trier of fact in determining whether the recovered spent ammunition was of a type that could have been fired from such a rifle. Had Reaves objected, Detective-Sergeant Plummer likely could have been qualified to testify as an expert. At a minimum, the record discloses that the prosecutor had a good-faith basis for believing that Detective-Sergeant Plummer was qualified to provide the challenged opinion testimony. Accordingly, the prosecutor's conduct of eliciting this testimony does not qualify as plain error.

2. MISSTATING EVIDENCE

Reaves also argues that the prosecutor argued facts not in evidence or misstated the evidence during closing argument. We disagree. A prosecutor is afforded great latitude during closing argument. "A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may

arise from the evidence." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003); *see also Bahoda*, 448 Mich at 282.

Reaves argues that the prosecutor mischaracterized Officer Patrick Cecile's testimony regarding the ammunition found during the search of Reaves's mother's home. We disagree. On direct examination, Officer Cecile testified that the ammunition was of a type that could be fired from "a rifle." On cross-examination, however, the questioning was directed at whether the ammunition could be fired from a high-velocity weapon, and Officer Cecile agreed that it "can be." During closing argument, the prosecutor argued that, according to Officer Cecile, the recovered ammunition "could have been loaded into a rifle like you see Defendant Jones-Hill carrying and that it could have been fired out of a rifle at a high velocity." Given the cross-examination by Reaves's own counsel, the prosecutor's remarks were a fair characterization of Officer Cecile's testimony. Accordingly, the prosecutor's remarks were not improper. Moreover, to the extent that there was any perceived mischaracterization of Officer Cecile's testimony, a curative instruction, upon timely objection, could have cured any error. *Williams*, 265 Mich App at 70-71. Indeed, even without an objection, the trial court protected Reaves's substantial rights by instructing the jury that the "lawyers' statements and arguments are ... not evidence" and the jury "should only accept things the lawyers have said that are supported by the evidence or by your own common sense."

Reaves also argues that the prosecutor improperly argued that there was more than one shooter in the following remarks:

> Again, ask yourselves, who was in the area of the Ace of Spades on Eight Mile Road carrying a firearm like the one that could have been used who had an altercation only five minutes before the

shooting had occurred? The Defendants. It's not a coincidence, ladies and gentlemen, that they were there with all of the tools necessary to have carried out this crime.

Now, the Judge is going to tell you and instruct you on some things. One of the things that the Judge is going to instruct you on is aiding and abetting. The Judge is going to tell you that anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and can be convicted of that crime as an aider and abettor.

So what does that mean? That means that what Defendant Reaves did in this case was help, assist, aid and abet Defendant Jones-Hill in carrying out this crime. But for Defendant Reaves [sic] involvement in this crime it could not have taken place.

You all probably heard the phrase it takes two to tango. That's what we have here. Without the vehicle, without a driver Defendant Jones-Hill could not have carried out this crime. He could not have fired the weapon and driven the vehicle. It required the help or assistance of somebody else. That somebody else is the Defendant, Defendant Turon Reaves.

Now let's take a look at the assistance that Defendant Reaves gave. You have testimony and you can see on video for yourself, Defendant Reaves or the Ford Fusion that the People submit is Defendant Reaves drive next to that Charger, pull up next to it, get closer to the vehicle and then start shooting. That was the testimony. You had heard testimony from victim Toma Al-Saoor that

> after the victim pulled up on the driver's side of his vehicle, they began firing shots from the passenger side, that it pulled in front of them, slowed down and began firing shots at the front of their vehicle. And you saw evidence tech photos of impacts to the front of that vehicle, that Dodge.
>
> Now what does that tell you about Defendant Reaves [sic] involvement? It tells you that he was an active participant. That he was specifically maneuvering that vehicle in a way to position it to put Mr. Jones-Hill in a position in which he would have been able to fire the shots in the way that he did.
>
> It wasn't a coincidence, it wasn't an accident. You would have had to have specifically maneuvered that vehicle in order to get it in the places that you see that vehicle in that video and the testimony that you heard from Mr. Al-Saoor.

Viewing these remarks in context, it is apparent that the prosecutor was not arguing that there was more than one shooter, but rather was arguing that Jones-Hill was the shooter and that Reaves assisted him by maneuvering the vehicle to put Jones-Hill in a position to fire the shots in the manner that he did. Indeed, the prosecutor specifically remarked that the same person could not have fired the shots and driven the vehicle. Reaves has not demonstrated that the prosecutor misstated the evidence in the challenged remarks.

Reaves also argues that the prosecutor inaccurately represented that Reaves went by the nickname "Terry" in the following closing remarks:

> You saw visitor logs from that Sherwood Heights Apartment building. Those are significant because at 9:15 p.m. you see a vehicle come into Sherwood

> Heights, where there has been testimony that Defendant Reaves's girlfriend Ms. Brittney Evans was living at the time. There is an entry in that log from Mr. Owens who said he was working security that night. At 9:15 a person by the name of Terry, which I submit to you all is a nickname for Turon Reaves, pulls in and meets with someone in building six apartment 205, which has been identified as the apartment building in which officers eventually executed a search warrant at, which was Defendant Turon Reaves's girlfriend's house. And it shows that the vehicle that he arrived in that day was a Ford. It gives you a license plate of BTZ 738.
>
> That's important because if you jump ahead to later on October the 14th, 2018, there is another entry at line 13. It is at 3:16 a.m. And at 3:16 a.m. on October 14th, 2018, the shooting would have already occurred. It would have happened an hour or so beforehand.
>
> Again, that is significant because if you look at the vehicle that Terry, again, going to see Evans in apartment 205, building six is now in a Chrysler.

At trial, evidence was presented that at approximately 9:15 p.m. on the night of the shooting, a person who identified himself as "Terry" visited the complex where Reaves's girlfriend lived, and was driving the same Ford Fusion that was involved in the shooting less than five hours later. Approximately an hour after the shooting, a person who again identified himself as Terry again visited Reaves's girlfriend at the complex, but this time was driving a different vehicle. Although Reaves argues that there was no evidence that he went by the nickname Terry, it was reasonable for the prosecutor to infer that the person who identified himself as "Terry" was actually Reaves, given the evidence that the

person was driving the same vehicle that Reaves was driving less than five hours later that same night, and that the resident who the person visited was Reaves's girlfriend. Accordingly, the prosecutor's argument was not improper. *Bahoda*, 448 Mich at 282.

### 3. MISSTATING THE LAW

Reaves argues that the prosecutor misstated the elements of first-degree premeditated murder in the following remarks during closing argument:

> Ladies and gentlemen, there's no doubt that what happened in this case is first degree murder. The elements of first degree murder are simple. That the killing was done with premeditation or thought out beforehand.
>
> These were innocent kids driving down Eight Mile Road minding their business, enjoying their Saturday night when their Dodge Charger got sprayed with gunfire by a white Ford Fusion. The vehicle pulled up first on the driver's side, then began firing shots and then pulled in front [sic, of] the vehicle and stopped[,] boxing them in. The vehicles were—the victim's [sic] were forced to reverse their vehicle in order to get away. This is first degree murder.
>
> What is in dispute for you as finders of fact to determine is who the perpetrators of this crime were. The evidence in this case shows that the perpetrators of this crime were the Defendants.
>
> * * *
>
> Ladies and gentlemen, the Defendants in this case are charged with first degree premeditated murder. The Judge is going to tell you that there are elements and we went through those. Basically

> what the elements are is they are laid out here. The Defendant caused the death of the victim, the Defendant intended to kill the victim, Defendant's intent to kill was premeditated, the killing was deliberate and it wasn't justified. So, basically, it was a murder that happened that was thought about, thought about or premeditated beforehand which we went through.

> Reaves appears to complain that the prosecutor failed to mention the necessary element of deliberation. Although the prosecutor did not refer to deliberation in her initial remarks, she did so in the latter remarks. In any event, Reaves does not dispute that the trial court properly instructed the jury on the elements of first-degree murder, and the court also instructed the jury that "if a lawyer has said something different about the law, follow what I said." This instruction was sufficient to protect Reaves's substantial rights.
>
> For the foregoing reasons, Reaves is not entitled to appellate relief on the basis of his unpreserved claims of prosecutorial misconduct.

*Reaves*, 2021 WL 4239024, at *14-17.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as to the admission of evidence (the lab report, the refusal to participate in the lineup, and the ammunition), Reaves cannot show that the prosecutor erred or engaged in misconduct given that the trial court admitted the evidence and the Michigan Court of Appeals' affirmed those evidentiary rulings. As discussed, the state courts' rulings that the evidence was admissible under state law is binding on federal habeas

review. *See Bradshaw*, 456 U.S. at 76. Additionally, a prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008) ("A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings."). Reaves fails to establish that the prosecution engaged in misconduct in this regard.

Second, as to misstating the evidence, it is well-settled that a prosecutor may not misstate the evidence or argue facts not in evidence. *See Donnelly*, 416 U.S. at 646 ("A long series of decisions of this Court, of course, ha[ve] established the proposition that the 'Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.'") (citation omitted); *Darden*, 477 U.S. at 181-82 (finding that the challenged prosecutorial comments "did not deprive petitioner of a fair trial" where "[t]he prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent"); *Stermer v. Warren*, 959 F.3d 704, 725 (6th Cir. 2020) ("The requirement that a prosecutor's arguments be rooted in the evidence also means that the evidence must be accurately described."); *see also Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005) (finding that the prosecutor's comments repeatedly and "blatantly misrepresent[ed]" testimony).

But a prosecutor can make arguments based upon the evidence and has "'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011); *see also Bates v. Bell*, 402 F.3d 636, 646 (6th Cir. 2005) ("To be certain, prosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."). Such was the case here. The prosecutor's argument regarding the ammunition evidence was based upon the ballistics evidence and Detective Cecile's testimony about the ammunition, as well as reasonable inferences therefrom. The prosecutor's argument that "Terry" was Reaves was based upon the testimony that Reaves' girlfriend lived at the complex and that "Terry" said he was going to visit her apartment and reasonable inferences from that testimony and Reaves' first name. Lastly, as discussed by the Michigan Court of Appeals, Reaves' claim that the prosecutor improperly argued that there were two shooters is belied by the record. The prosecutor's remarks, read in context and viewed as whole, demonstrates the prosecutor's argument was that co-defendant Jones-Hill was the shooter and Reaves was the driver. Petitioner fails to show that the prosecutor's argument was improper or that it rendered his trial fundamentally unfair.

Third, as to misstating the law on first-degree murder, the record belies Reaves' claim. While the prosecutor did not mention deliberation

when initially discussing the elements of first-degree murder during closing argument, the prosecutor did discuss the element of deliberation during the course of that argument. *See* 11/26/19 Trial Tr., ECF No. 8-12, PageID.1084, 1105. Thus, when read in its entirely, the prosecutor's closing argument did not misstate the law. Nonetheless, even if any of the prosecutor's remarks could be seen as improper, the trial court's jury instructions mitigated any potential prejudice to the defense. The trial court instructed the jurors that they should decide the facts of the case based upon the evidence, that they should follow the court's instructions on the law even if an attorney says something different, and that the attorneys' statements and arguments are not evidence. The trial court also properly instructed the jury on the presumption of innocence, reasonable doubt, and the elements of the charged offenses. *See* 11/27/19 Trial Tr., ECF No. 8-13, PageID.1150-52, 1161-69. As discussed, jurors are presumed to follow the court's instructions. *See Penry*, 532 U.S. at 799; *Powell*, 469 U.S. at 66.

Reaves fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair. Habeas relief is not warranted on these claims.

### I. Effectiveness of Trial Counsel

Lastly, Reaves asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the prosecutor's alleged misconduct and admission of evidence. He relatedly asserts that he is

entitled to habeas relief based upon the cumulative effect of such errors. Respondent contends that this claim lacks merit.

As discussed above, the Supreme Court has set forth a two-prong test for establishing that a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. *Id*. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id*. Second, the petitioner must prove that counsel's deficient performance prejudiced the defense. *Id*. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the first performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. A habeas petitioner bears the burden of overcoming the presumption that the challenged actions "might be considered sound trial strategy." *Id*. at 689. To satisfy the second prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome" of the proceeding. *Id.*

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. *See Harrington*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.") (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained:

> Reaves argues that defense counsel was ineffective for failing to object to the prosecutor's conduct discussed in Section II(E), supra. As explained in that discussion, none of the prosecutor's challenged conduct has been shown to be improper. Thus, any objection would have been futile. Defense counsel is not ineffective for failing to make a futile objection. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998). Further, to the extent that there was any perceived prejudice, the trial court's instructions were sufficient to protect Reaves's right to a fair trial. Therefore, Reaves is unable to demonstrate that he was prejudiced by counsel's failure to object.

*Reaves*, 2021 WL 4239024, at *17.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the Michigan Court of Appeals' decision, as well as this Court's determination that the underlying evidentiary and prosecutorial misconduct claims lack merit, Reaves cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct for not objecting to such matters at trial. Counsel cannot be ineffective for failing to make a futile or meritless objection or argument. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel. Because the underlying legal claim lacks merit, the failure of Tackett's trial counsel to raise that claim does not constitute ineffective assistance of counsel.") (citation omitted); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) ("Appellate counsel's failure to raise these . . . claims does not establish cause to excuse the default, however, because the underlying claims are meritless."); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("The underlying arguments are meritless; it could scarcely be ineffective of appellate counsel not to raise them. Omitting meritless arguments is neither professionally unreasonable nor prejudicial.") (citations omitted). Thus, Reaves fails to establish that trial counsel was ineffective under the *Strickland* standard.

Additionally, as to cumulative error, the Sixth Circuit has ruled that a cumulative error claim is not cognizable on habeas review. *See*

*Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[P]ost-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.") (citations omitted); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore*, 425 F.3d at 256) ("Post-AEDPA, th[e] claim [that the cumulative effect of counsel's errors rendered his trial fundamentally unfair] is not cognizable."). And the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Reaves thus fails to state a claim upon which relief may be granted as to this issue. Moreover, given that the individual underlying claims lack merit, Reaves cannot establish that he is entitled to relief based upon cumulative error.

Habeas relief is not warranted on this claim.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Reaves is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the habeas petition.

Before Reaves can appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability is warranted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that

"reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a court denies relief on procedural grounds, a certificate of appealability should issue if reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and reasonable jurists "would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Having considered the matter, the Court concludes that Reaves fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal. This case is closed.

**IT IS SO ORDERED**.

Dated: August 26, 2016

/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE